UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHERON L. HARRISON,

    Plaintiff,

    v.

GALE ANN NORTON, Secretary of the
Interior, and NEAL McCALEB, Assistant
Secretary of the Interior,

    Defendants.

Civil Action No. 05-2060 (CKK)

**MEMORANDUM OPINION**
(April 11, 2006)

Plaintiff Sheron L. Harrison brings this action *pro se* against Defendants Gale Ann Norton,

Secretary of the Interior, and Neal McCaleb, Assistant Secretary of the Interior (collectively,

"Defendants"), alleging, *inter alia*, that the Department of Interior's alleged issuances and denials of

Certificates of Degree of Indian Blood ("CDIB") are contrary to law, arbitrary and capricious, and

in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq. See* Pl.'s First

Am. Compl. at 7; *see also* Pl.'s Opp'n at 1.  Currently before the Court are (1) Defendants' Motion

to Dismiss for Lack of Jurisdiction, Plaintiff's Opposition, Defendants' Reply, and Plaintiff's

Surreply; and (2) Plaintiff's Motion for Leave to File a Second Amended Complaint and

Defendant's Opposition.  Upon a searching examination of these filings, the attached exhibits, the

relevant case law, and the entire record herein, the Court finds that the doctrine of *res judicata*

prevents it from considering Plaintiff's challenge as it specifically relates to Plaintiff.[1]  As such,

---

[1] Given the difficult, obtuse wording of Plaintiff's First Amended Complaint, Defendants
also contend that Plaintiff's failure to allege a waiver of sovereign immunity prevents the Court from
considering Plaintiff's generalized challenge to the issuance or denial of CDIBs.  *See* Defs.' Mot. to
Dismiss at 4-5; Defs.' Reply at 6-9.  Because Plaintiff lacks standing to make any generalized

given that Plaintiff's Motion for Leave to File a Second Amended Complaint is futile and does not

(and cannot) correct these flaws, the Court shall grant Defendants' Motion to Dismiss and deny

Plaintiff's Motion for Leave to File a Second Amended Complaint.

## I: BACKGROUND

Plaintiff, a *pro se* litigant, filed her Complaint on October 19, 2005.  On December 5, 2005,

prior to the Defendants' entry of a responsive pleading, Plaintiff filed a Motion to Amend/Correct

her Complaint.  In a Minute Order dated February 3, 2006, the Court granted Plaintiff's Motion to

Amend, pursuant to Federal Rule of Civil Procedure 15(a).  *See Harrison v. Norton*, Civ. No. 05-

2060 (D.D.C. Feb. 3, 2006) (minute order granting motion for leave to amend complaint).  As such,

Plaintiff's First Amended Complaint is now the controlling document with respect to the scope of

Plaintiff's claims.[2]

---

challenge given that Plaintiff's own action is barred by *res judicata*, the Court need not address this issue.

[2] Following the completion of briefing with respect to Defendant's Motion to Dismiss, Plaintiff filed a Motion for Leave to File Second Amended Complaint on March 20, 2006.  Once a responsive pleading is served, however, a party may amend its complaint only by leave of the court or by written consent of the adverse party.  *See* Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Wiggins v. Dist. Cablevision, Inc.*, 853 F. Supp. 484, 499 (D.D.C. 1994).  The grant or denial of leave to amend is committed to the sound discretion of the district court.  *See Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  "Although the grant or denial of leave to amend is committed to a district court's discretion, it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by [previous] amendments . . . [or] futility of amendment.'"  *Id.* at 1208 (quoting *Foman*, 371 U.S. at 182, 83 S.Ct. 227); *see also Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1084 (D.C. Cir. 1998) (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) for the proposition that a district court's discretion to grant leave to amend is "severely restricted" by the command in Rule 15 that such leave "be freely given").

As discussed, *infra*, Plaintiff's Second Amended Complaint does not – and cannot – cure the central deficiency in her First Amended Complaint.  That is, Plaintiff's claims are barred by the doctrine of *res judicata*.  The Court may deny as futile a motion to amend a complaint when the proposed complaint would not survive a motion to dismiss.  *James Madison*, *Ltd. v. Ludwig*, 82

While quite unclear at times,[3] Plaintiff's Amended Complaint appears to be contesting the decision of the United States Department of Interior, Bureau of Indian Affairs ("BIA") to deny her a "Certificate of Indian Blood."  *See* First Am. Compl. at 3-4.  "Certificates of Degree of Indian Blood ('CDIBs') are issued by the BIA and are the BIA's certification that an individual possesses a specific quantum of Indian blood.  A CDIB entitles the holder to participate in some government assistance programs."  *Davis v. United States*, 192 F.3d 951, 956 (10th Cir. 1999).  Plaintiff claims to be a "lineal descendant[] of [an] original enrollee" and asserts that she should not be required to prove "Choctaw by blood" because her ancestors allegedly did not have to do so.  *See* First Am. Compl. at 4-5.

Piecing together the context of Plaintiff's allegations from a variety of sources, it appears that the "original enrollee" referred to by Plaintiff seems to by Cyrus H. Kingsbury, who was enrolled as a member of the Choctaw tribe on the Final Choctaw Rolls.  *See id.* at 3-4; Pl.'s Opp'n at 2; *see also Harrison v. Dep't of Interior*, 229 F.3d 1163, 2000 WL 1217841, at *1 (10th Cir. Aug. 28, 2000), *cert. denied*, 531 U.S. 1056, 121 S.Ct. 665, 148 L.Ed.2d 567 (2000), *reh'g denied*, 531 U.S. 1186, 121 S.Ct. 1177, 148 L.Ed.2d 1035 (2001).  In January 1997, Plaintiff submitted an application for a CDIB and for tribal membership to the Choctaw Nation on behalf of herself and other relatives who are not involved in this case based on her apparent relation to Cyrus

---

F.3d 1085, 1099 (D.C. Cir. 1996); *see also* 3 Moore's Federal Practice § 15.15[3] (3d ed. 2000) ("An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss.").  Given that this lawsuit represents the third time that Plaintiff has attempted to litigate the same claims, the Court shall deny Plaintiff's Motion for Leave to File Second Amended Complaint as futile.

[3] *See, e.g.*, Pl.'s First Am. Compl. at 5 ("The Secretary at this point is suggesting that Adams and my ancestor are ducks on a role of flies and mosquitoes.  Adams and my ancestor were given land allotment and money as flies or mosquitoes, but are now being considered ducks.").

Kingsbury.  *See Harrison*, 2000 WL 1217841, at *1.  However, the Choctaw Nation, acting on

behalf of the BIA, denied Plaintiff's request, stating that although Cyrus Kingsbury, was enrolled as

a member of the Choctaw tribe, he obtained this status as a white person adopted by the tribe

(referred to as an "AW" or "adopted white") rather than by possessing a specific quantum of Indian

blood.  *Id.*  Plaintiff then appealed this decision to the Muskogee Area Director of the BIA, who

reached the same conclusion as the Choctaw Nation and denied the request for a CDIB on July 17,

1997.  *Id.*  The Director further found that Ida Kingsbury, Lucy Ann McDermott, and Annie Keel,

other ancestors noted by Plaintiff in her application, were listed on the rolls as freedmen, with no

Indian blood ascribed.  *Id.*

Thereafter, Plaintiff began her long road of federal litigation revolving around her inability

to obtain a CDIB.  Following the Director's denial of her appeal, Plaintiff brought a suit in the

United States District Court for the Eastern District of Oklahoma, alleging that the BIA's decision

was arbitrary and capricious, and in violation of the APA.  In a Memorandum Opinion dated August

23, 1999, Judge Frank H. Seay affirmed the BIA's ultimate decision.  *See Harrison v. Dep't of*

*Interior*, Civ. No. 98-228 (E.D.Okla. Aug. 23, 1999).  Plaintiff appealed this decision to the Tenth

Circuit, which affirmed the lower court's opinion by concluding that (1) the district court had the

entire administrative record before it, and (2) Plaintiff had failed to show that the BIA's action was

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *See*

*Harrison*, 2000 WL 217841, at *1-*2.  Plaintiff's subsequent appeals to the United States Supreme

Court proved unsuccessful.  *See Harrison*, 531 U.S. 1056, 121 S.Ct. 665, 148 L.Ed.2d 567 (2000)

(denying certiorari); *id.*, 531 U.S. 1186, 121 S.Ct. 1177, 148 L.Ed.2d 1035 (2001) (denying

request for a rehearing).

Following the conclusion of Plaintiff's first action, Plaintiff filed another complaint in this Court on October 19, 2001, which essentially alleged that the BIA's 1998 determination was achieved by a conspiracy to commit fraud. *See Harrison v. Norton*, Civ. No. 01-2188 (CKK), at 2 (D.D.C. Sept. 8, 2003) (memorandum opinion granting def.'s mot. to dismiss) (Kollar-Kotelly, J.). Named as Defendants in this 2001 suit filed by Plaintiff were Gale Ann Norton, Secretary of the Interior, and Neal McCaleb, Assistant Secretary of the Interior. *Id.* at 1.  In a Memorandum Opinion dated September 8, 2003, this Court granted Defendants motion to dismiss for failure to state a claim upon which relief may be granted, finding that Plaintiff's claims were barred by the doctrine of *res judicata*. *Id.* at 3.

On May 26, 2005, Plaintiff apparently filed another application for a CDIB with copies of birth and death records with the BIA. *See* Pl.'s Opp'n at 1.  Once again, the BIA denied her application, apparently by simply returning the application via mail and providing her with a copy of its 1997 denial; Plaintiff's present suit attempts to contest this 2005 denial. *Id.*  Plaintiff contends that – unlike her previous complaint before this Court – her current suit is not barred by the doctrine of *res judicata* because "[t]he prior ruling simply allowed the Defendant(s) to state that my ancestor was not by blood.  It was never actually decided that if the *Final Roll Choctaw by Blood* are the by blood members, my ancestor is on that roll see Exh. A, does the discretionary power of the Defendant(s) allow this roll to be considered on an ad hoc basis other than to simply require birth and death records." *See id.* at 6-7.  In contrast, Defendants maintain that Plaintiff's CDIB application was denied for the same reasons as it was in 1997, and Plaintiff's attempt to resurrect her long-dead claims run afoul of the doctrine of *res judicata*. *See* Defs.' Reply at 4-5.

Plaintiff's prayer for relief in this case appears to seek a declaration of the law.  *See* First

Am. Compl. at 7.  Plaintiff asks the Court to "answer that the roll is final and the Defendant(s) have

lost discretionary power to use the 'by blood' roll and pick and choose from the already adjudge by

blood original enrollee."  *Id.*  Plaintiff appears to assert that the BIA should not be permitted to

approve the final listing of CDIBs.  *Id.*

## II: LEGAL STANDARDS

### A.      *Rule 12(b)(1)*

A court must dismiss a case when it lacks subject matter jurisdiction pursuant to Rule

12(b)(1).  In general, a motion to dismiss under Federal Rule of Civil Procedure 12(b) should not

prevail "unless plaintiffs can prove no set of facts in support of their claim that would entitle them to

relief."  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing *Conley v.

Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).  A court may appropriately dispose

of a case under 12(b)(1) for standing, and may "consider the complaint supplemented by undisputed

facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's

resolution of disputed facts."  *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198

(D.C. Cir. 2003) (citations omitted); *see also Artis v. Greenspan*, 223 F. Supp. 2d 139, 152 n.1

(D.D.C. 2002) ("A court may consider material outside of the pleadings in ruling on a motion to

dismiss for lack of venue, personal jurisdiction or subject matter jurisdiction."); *Vanover v.

Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) ("where a document is referred to in the complaint

and is central to plaintiff's claim, such a document attached to the motion papers may be considered

without converting the motion to one for summary judgment") (citing *Greenberg v. The Life Ins.

Co. of Virginia*, 177 F.3d 507, 515 (6th Cir. 1999)).  At the stage in litigation when dismissal is

sought, the plaintiff's complaint must be construed liberally, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).

B.      *Rule 12(b)(6)*

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, unlike resolving a motion under Rule 12(b)(1), the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."). This is particularly true so when the Plaintiff brings her suit *pro se*. *See Razzoli v. Fed. Bureau of Prisons*, 230 F.3d 371, 374 (D.C. Cir. 2000). While the court must construe the Complaint in the Plaintiff's favor, it "need not accept inferences drawn by the plaintiff[] if such inferences are not supported by the facts set out in the complaint." *Kowal*, 16 F.3d at 1276. Moreover, the court is not bound to accept the legal conclusions of the non-moving party. *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997). The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See St. Francis Xavier Sch.*, 117 F.3d at 624; *Marshall County Health Care Auth.*

7

*v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993).  Factual allegations in briefs of memoranda

of law may not be considered when deciding a Rule 12(b)(6) motion, particularly when the facts

they contain contradict those alleged in the complaint.  *Henthorn v. Dep't of Navy*, 29 F.3d 682,

688 (D.C. Cir. 1994); *cf. Behrens v. Pelletier*, 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773

(1996) (when a motion to dismiss is based on the complaint, the facts alleged in the complaint

control).

### III: DISCUSSION

A review of Plaintiff's complaint, the briefings, and the relevant law, leads the Court to once

again conclude that Plaintiff's claims are all barred by the doctrine of *res judicata*.[4]  As the Supreme

Court has explained

> The federal courts have traditionally adhered to the related doctrines of res judicata and collateral estoppel.  Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.  *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195.  Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.  *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210.  As this Court and other courts have often recognized, res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.  *Id*., at 153- 154, 99 S.Ct., at 973-974.

*Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *see also Dynaquest*

---

[4] For the purposes of this motion, the Court will assume that the BIA's return of Plaintiff's 2005 CDIB application was a "final agency action" for the purposes of the APA.  Importantly, the jurisdiction of federal courts to review agency action is limited to "final agency action."  *See Student Loan Marketing Ass'n v. Riley*, 907 F. Supp. 464, 471-72 (D.D.C. 1995); *see also* 5 U.S.C. § 704 ("A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.").  Here, Plaintiff simply alleges that the BIA simply returned her May 26, 2005 CDIB application "with a copy of the letter of final denial dated July 17, 1997, and no mention of my application of May 27, 2005."  *See* Pl.'s Opp'n at 1.  It is not at all clear whether this act was sufficient to constitute a "final agency action."

*Corp. v. U.S. Postal Serv.*, 242 F.3d 1070, 1075 (D.C. Cir. 2001). The doctrine of *res judicata*

applies even though a plaintiff may view the first adjudication as having been erroneously decided.

*See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103

(1981) ("[n]or are the *res judicata* consequences of a final, unappealed judgment on the merits

altered by the fact that the judgment may have been wrong"). "In order for res judicata to apply,

defendants must demonstrate the existence of (1) an identity of parties in both suits; (2) a judgment

rendered by a court of competent jurisdiction; (3) a final judgment on the merits; and (4) an identity

of the cause of action in both suits." *Paley v. Estate of Ogus*, 20 F. Supp. 2d 83, 87 (D.D.C. 1998).

Here, the first prong of the *res judicata* analysis is clearly satisfied. Plaintiff is the

individual who brought this suit, the 1998 suit in the Eastern District of Oklahoma, and the 2001

suit before this Court in the United States District Court for the District of Columbia. Defendants in

the present suit are the same two individuals named in Plaintiff's 2001 suit, and are officials in the

Department of the Interior, which was the named defendant in Plaintiff's 1998 suit. *See Harrison*,

2000 WL 1217841. In addition, Plaintiff does not contest that the judgments in the prior cases were

rendered by courts of competent jurisdiction or that the judgments reflected final adjudications on

the merits. As such, both the second and third prongs of the *res judicata* analysis are satisfied.

Finally, the fourth prong of the *res judicata* analysis is also clearly satisfied in this case, as

there is an identity in the cause-of-action underlying this suit, Plaintiff's 1998 suit in the Eastern

District of Oklahoma, and Plaintiff's 2001 suit before this Court. Although Plaintiff's claims in this

case are not entirely clear, at the very least Plaintiff challenges the denial of her CDIB and her being

denied "rights and privileges 'by blood.'" *See* First Am. Compl. at 5. The issue of Plaintiff's CDIB

status has already been litigated before the United States District Court for the Eastern District of

Oklahoma, *see Harrison v. Dep't of Interior*, Civ. No. 98-228 (E.D.Okla. Aug. 23, 1999), and,

upon appeal, before the Tenth Circuit, *see Harrison v. Dep't of Interior*, 229 F.3d 1163, 2000 WL

1217841, at *1 (10th Cir. Aug. 28, 2000), *cert. denied*, 531 U.S. 1056, 121 S.Ct. 665, 148

L.Ed.2d 567 (2000), *reh'g denied*, 531 U.S. 1186, 121 S.Ct. 1177, 148 L.Ed.2d 1035 (2001).

Indeed, Plaintiff's first attempt to re-litigate the determination made by the Choctaw Nation and the

BIA was determined by this Court to be barred by *res judicata* in 2003.  *See Harrison v. Norton*,

Civ. No. 01-2188 (CKK) (D.D.C. Sept. 8, 2003) (memorandum opinion granting def.'s mot. to

dismiss) (Kollar-Kotelly, J.).  This Court dismissed Plaintiff's previous case upon a finding that (1)

Plaintiff brought both the Tenth Circuit and 2001 complaint against the same officials at the

Department of the Interior; (2) the judgment in the Tenth Circuit was a final judgment on the merits;

(3) by a court of competent jurisdiction; and (4) the claims in both cases were identical, as Plaintiff

was seeking to challenge the denial of her CDIB petition.  *Id.* at 4-5.

   Here, Plaintiff attempts to escape the inevitable conclusion that this suit shares an identity in

cause-of-action with her previous suits by making three arguments, each of which are without merit.

First, Plaintiff emphasizes that this suit revolves around her 2005 CDIB application, not her 1997

petition.  *See* Pl.'s Opp'n at 8.  Two points are worth noting:  (1) to the extent that this was a new

application, it was not mentioned anywhere in Plaintiff's First Amended Complaint, the controlling

document for Plaintiff's claims in this litigation, *see generally* Pl.'s First Am. Compl.; and (2)

Plaintiff's "new" application is insufficient to overcome *res judicata* where Plaintiff is still

challenging the same factual circumstances – i.e., the denial of her CDIB status.  *See Peugeot*

*Motors of Am., Inc. v. E. Auto Distrib., Inc.*, 892 F.2d 355, 359 (4th Cir. 1989) (continued

application of previously challenged policies does not create a new claim for the purposes of *res*

*judicata*).

Second, Plaintiff argues, citing *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86 (2d Cir. 1997), that while the claims asserted in this action might "overlap[]" with those in her prior actions, the present action is not barred because it gives rise to "separate statutory wrongs." *See* Pl.'s Opp'n at 6 (citing *Interoceanica*, 107 F.3d at 91). Plaintiff's reliance on the doctrine set forth in *Interoceanica* is misplaced. In *Interoceanica*, the Second Circuit was faced with an action brought by pilots (i.e., naval navigators) to recover pilotage fees for voyages in Long Island Sound pursuant to a New York statute. *See Interoceanica*, 107 F.3d at 88. Upon consideration of the pilots' claim, the Second Circuit held that the action was not barred by *res judicata* because it "concern[ed] distinct voyages after those litigated in [the prior action], [that did] not arise out of the same 'transaction or connected series of transactions' as the [prior action]." *Id.* at 91. The present case involves no such distinction. While Plaintiff's First Amended Complaint is somewhat unclear, Plaintiff certainly places in issue the reasons for the denial of her CDIB. *See* First Am. Compl. at 3-4. This action is not based on subsequent events, but instead is based on the same event – the denial of her status entitling her to a CDIB – and is the same claim that was litigated in the Tenth Circuit and the same claim that Plaintiff attempted to re-litigate before this Court with her 2001 suit. Indeed, the BIA recognized as much when it simply returned Plaintiff's May 26, 2005 CDIB application "with a copy of the letter of final denial dated July 17, 1997, and no mention of [Plaintiff's] application of May 27, 2005." *See* Pl.'s Opp'n at 1. As *Interoceanica* explains, under *res judicata*, "a judgment in an action 'precludes the parties . . . from relitigating issues that were or could have been raised in that action.'" *Interoceanica*, 107 F.3d at 90 (quoting *Federated Dep't Stores*, 452 U.S. at 398, 101 S.Ct. 2424). The Second Circuit emphasized:

11

the doctrine of res judicata provides that when a final judgment has been entered on the merits of a case, [i]t is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, nor only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.

*Id.* (citations omitted).

Plaintiff's present action is barred for the same reasons articulated by this Court in its previous decision. *See Harrison v. Norton*, Civ. No. 01-2188 (CKK) (D.D.C. Sept. 8, 2003) (memorandum opinion granting def.'s mot. to dismiss) (Kollar-Kotelly, J.). Plaintiff is suing the same Department of the Interior Defendants as in her 1998 Tenth Circuit case and in her 2001 case before this Court. *Id.* at 4. The Tenth Circuit decision was a final judgment on the merits by a court of competent jurisdiction. *Id.* Finally, the cause-of-action in both suits – a challenge to the legitimacy and rationale of the denial of Plaintiff's CDIB application – is the same. *Id.* Here, Plaintiff tries to construe her present action as distinct by emphasizing that it raises issues related to the "final roll Choctaw by blood." *See* Pl.'s Opp'n at 6. Nonetheless, Plaintiff's action remains a challenge to the denial of her requested CDIB status and the reasons for that denial. Any theories supporting such a claim could have been litigated in her prior Tenth Circuit action, and are therefore barred by *res judicata* in this case. *See Paley*, 20 F. Supp. 2d at 87.

Importantly, the reasons that Plaintiffs she was denied eligibility in the present action are exactly the same reasons that she was denied eligibility in her prior 1998 action brought in the Tenth Circuit. As the Tenth Circuit noted,

[the Choctaw Nation] stated that although Cyrus Kingsbury was enrolled as a member of the Choctaw tribe, he obtained this status as a white person adopted by the tried (referred to as an "AW" or "adopted white") rather than possessing a specific quantum of Indian blood. Harrison appealed this decision to the Muskogee Area Director of the BIA, who reached the same conclusion as the Choctaw Nation and denied the request for a CDIB . . . . Harrison thereafter sought review of the Director's decision in the district court.

*Harrison*, 2000 WL 1217841 at *1.  As Plaintiff clarifies in her Opposition in this case, her claim

for CDIB status stems from her idea that because Cyrus Kingsbury appears on the final roll and the

Department of the Interior has no right to deviate from the roll based on blood quantum, "thereby to

distinguish one citizen from another."  Pl.'s Opp'n at 2.  This was the very issue resolved against

Plaintiff in her prior 1998 action brought in the Eastern District of Oklahoma, *see Harrison v.*

*Dep't of Interior*, Civ. No. 98-228 (E.D.Okla. Aug. 23, 1999), and any and all arguments to justify

her position to qualify for a CDIB based upon Cyrus Kingsbury had to be made at that time.  As this

Court recognized when it dismissed Plaintiff's previous suit in 2003,

> all of Plaintiff's present claims involve the BIA's determination that Plaintiff's
> ancestor, Mr. Kingsbury, was not a "citizen by blood" of the Choctaw Nation of
> Oklahoma.  This is precisely what Plaintiff challenged in her suit in the Tenth
> Circuit.  As the Supreme Court instructs, Plaintiff is estopped from "relitigating
> issues that were *or could have been raised in that action*."

*Harrison v. Norton*, Civ. No. 01-2188 (CKK), at 5 (D.D.C. Sept. 8, 2003) (memorandum opinion

granting def.'s mot. to dismiss) (Kollar-Kotelly, J.) (quoting *Allen*, 449 U.S. at 94, 101 S.Ct. 411)

(emphasis added).

    Third, and finally, Plaintiff argues that *res judicata* does not apply based upon *Stanton v.*

*District of Columbia Court of Appeals*, 127 F.3d 72 (D.C. Cir. 1997), and *Comm'r of Internal*

*Revenue v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948).  *See* Pl.'s Opp'n at 8.  Once

again, Plaintiff's reliance upon these cases is misplaced.  Importantly, *Stanton* and *Sunnen* both

involved claims that were based on post-judgment events and therefore were not barred by *res*

*judicata*.  *See Stanton*, 127 F.3d at 78-79 (suspended lawyer's challenge to reinstatement

proceedings was not barred where prior action challenged original suspension; plaintiff's

reinstatement challenge was a new claim distinct from his suspension challenge, based on post-

judgment events); *Sunnen*, 333 U.S. at 597-600, 68 S.Ct. 715 (litigation over the validity of similar

conduct occurring in different taxable years, after the acts covered by the initial litigation, was not

barred).  In the present case, Plaintiff again challenges the denial of her CDIB and the reasons for

that denial.  Importantly, in contrast to *Stanton* and *Sunnen*, Plaintiff's lineage is fixed:  the nature

of Plaintiff's lineage could not change after the initial resolution of her claim, and all theories for

qualification could have been – and should have been – litigated in the prior action brought in the

Tenth Circuit.  Plaintiff's present action is simply barred by *res judicata*.

       Plaintiff's remaining arguments, to the extent that they are cognizable, go to the merits of the

prior decision in the Tenth Circuit.  *See* Pl.'s Opp'n at 8-11.  This Court does not have jurisdiction

to review the "correctness" of that decision.  "[T]his circuit . . . has no authority to collaterally

review the decisions of a sister circuit."  *Dynaquest*, 242 F.3d at 1075.  Despite Plaintiff's apparent

argument that the Eastern District of Oklahoma and the Tenth Circuit were mistaken, this Court

lacks jurisdiction over such a collateral attack on the final judgment of that court.  *See Federated*

*Dep't Stores*, 452 U.S. at 398, 101 S.Ct. 2424 ("A judgment merely voidable because based upon

an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct

review and not by bringing another action upon the same cause [of action].") (quoting *Baltimore*

*S.S. Co. v. Phillips*, 274 U.S. 316, 325, 47 S.Ct. 600, 71 L.Ed. 1069 (1927)).

**IV: CONCLUSION**

For the reasons set forth above, the Court shall grant Defendant's Motion to Dismiss.  An

Order accompanies this Memorandum Opinion.


Date:   April 11, 2006

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge